IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DEBORAH WATSON,               )
                              )
       Plaintiff,             )
                              )
   v.                         )         1:18cv119
                              )
UNITED PARCEL SERVICE, INC.,  )
                              )
       Defendant.             )
```

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This is an employment discrimination action by Plaintiff Deborah Watson alleging unlawful discrimination by Defendant United Parcel Service, Inc. ("UPS") in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), on the basis of sex, hostile work environment, and retaliation. Before the court is a motion to dismiss by UPS. (Doc. 7.) Watson has not responded to this motion. For the reasons discussed below, the motion will be granted.

**I. BACKGROUND**

The complaint, viewed in the light most favorable to Watson as the non-moving party, alleges the following:

Watson has been a package delivery driver for UPS at the 199 Park Plaza Drive, Winston-Salem, North Carolina branch for approximately twenty-eight years. (Doc. 1 ¶ 7.) In 2010, she was warned that she took too many restroom breaks and was fired on

1

July 29, 2010, for "dishonesty and theft of time." (Id. ¶ 9.) Watson apparently returned to work thereafter, although the circumstances of her return are unclear.

During a performance review in January of 2011, Watson was treated like a "dog or a rug under [her supervisor's] feet." (Id. ¶ 10.) A co-worker who witnessed the event contacted management over concern about Watson's treatment. (Id.)

On February 10, 2011, Watson filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she was being harassed for taking restroom breaks outside of her allotted time to use the restroom or eat lunch. (Id. ¶ 11.) Watson alleges that UPS retaliated against her for filing this EEOC charge by issuing her "safety letters" in 2011 and 2012. (Id. ¶ 12.)

On February 26, 2016, Watson was terminated for "dishonesty and falsifying records" following her delivery of "an NDA[1] to a business during a hail storm." (Id. ¶ 14.) She "had already been warned of termination in February because of the complaints she'd filed against a female employee who had acted violently towards [her]." (Id.) Watson was reinstated in April 2016. (Id. ¶ 15.)

In May of 2016, Watson was asked to work in place of a male coworker who was suffering from a kidney stone. (Id. ¶ 16.) This

---

[1] This is not explained in the complaint. In shipping parlance, NDA sometimes refers to "next day air." See UPS Next Day Air, https://www.ups.com/us/en/shipping/services/domestic/next-day-air.page (last visited Jul. 5, 2018).

violated UPS "contract procedure,"[2] which dictated that the least senior employee relieve injured coworkers. (Id.) In June 2016, Watson requested to work an eight-hour day, which UPS drivers are allowed to do twice a month. (Id. ¶ 17.) Though this request appears to have been granted, Watson still had to work a nine-hour day because her truck was given to another driver, forcing her to wait an hour before beginning her route. (Id.)

Watson alleges that she was treated less favorably than male employees when she was called as a relief driver and when she requested to work an eight-hour day, but was required to work a nine-hour day. (Id. ¶ 18.) On October 7, 2016, Watson filed her second EEOC charge alleging ongoing discrimination, starting in 2010, on the basis of her gender and retaliation. (Doc. 8-1 at 1.)

On February 20, 2018, Watson filed this lawsuit against UPS. (Doc. 1.) UPS responded with the pending motion to dismiss. (Doc. 7.) Watson has not filed a response – despite the court having sent her counsel a letter warning that failure to timely respond to the motion would result in the motion being referred to the court for consideration as unopposed and without a hearing (Doc. 9) - and her deadline to do so has passed.

---

[2] Watson never identifies a controlling contract or outlines its terms. (Doc. 1 ¶ 16.) Regardless, the court accepts her claim as true for purposes of the present motion.

**II. ANALYSIS**

    **A. Legal Standard**

Even though the motion to dismiss is unopposed and the court's local rules provide it can ordinarily be granted on that basis, see Local Rule 7.3(k), the court nevertheless must satisfy itself that the motion is merited. Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438, 449 (M.D.N.C. 2005). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Application of these principles to Watson's various potential claims is discussed below.

    **B. Pre-April 2016 Claims**

UPS first contends that any claim based on conduct outside the 180-day period preceding Watson's EEOC charge is untimely and must be dismissed.

Title VII requires a claimant to file a charge with the EEOC within 180 days of the alleged unlawful employment practice, unless within that period the claimant had initiated proceedings with a state or local agency, in which case the charge must be filed with the EEOC within 300 days. 42 U.S.C. § 2000e-5. When a plaintiff fails to file a complaint "in a timely fashion with the EEOC, the claim is time-barred in federal court." McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994) (citing Butts v. New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993)). However, the timely filing of a charge of discrimination, "like a statute of limitations, is subject to waiver, estoppel and equitable tolling." See Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982). The Fourth Circuit has held that these are "narrow" exceptions and should only be invoked if "an employee's failure to timely file results from either a 'deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" Olson v. Mobil Oil Corp., 904 F.2d 198, 201 (4th Cir. 1990) (quoting Price v. Litton Business Sys., Inc., 694 F.2d 963, 965 (4th Cir. 1982)); Henry v. Rexam Beverage Can of N. Am., No. CA 3:10-2800-MBS-SVH, 2012 WL 2501994, at *5 (D.S.C. Apr. 18, 2012), report and recommendation adopted, No. CA 3:10-2800-MBS, 2012 WL 2502726 (D.S.C. June 27, 2012).

In the present case, Watson did not file her EEOC charge until

5

October 7, 2016.  (Doc. 8-1 at 2.)  She does not allege that she initially filed any claim with a state or local agency.  Thus, any claim based on any incident that occurred before April 10, 2016, is untimely.

Moreover, Watson alleges no facts that would suggest that UPS deliberately acted to delay or prevent her from filing timely.  In her complaint, Watson describes various acts of alleged discrimination beginning in 2010 including: a collection of warnings Watson received due to taking too many restroom breaks and her subsequent firing for the same reason in 2010; an incident where Watson was treated poorly by a supervisor in January 2010; the alleged retaliation by means of "safety letters" in response to her filing an EEOC charge in February 2011; Watson not being properly paid for overtime that she worked in 2013; and Watson being terminated for "dishonesty and falsifying records" in February 2016.  (Doc. 1 ¶¶ 8-14.)  Any claims arising out of these actions are barred as untimely.  Howard v. U.N.C. Health Care Sys., No. 1:10-CV-47, 2010 WL 6111630, at *3 (M.D.N.C. Sept. 7, 2010), report and recommendation adopted, No. 1:10-CV-47, 2011 WL 941495 (M.D.N.C. Mar. 7, 2011), aff'd sub nom. Howard v. UNC Healthcare Sys., 444 F. App'x 666 (4th Cir. 2011) ("Any charge filed after the 180-day period is time-barred unless there are grounds for equitable tolling or estoppel.").

Lastly, Watson did timely file an EEOC charge on February 10,

2011, for "the harassment stemm[ing] from not having reported her restroom breaks as break time or lunch." (Doc. 1 ¶ 11.) However, she is also barred from asserting claims arising from that EEOC charge because she has failed to file this action within 90 days of the issuance of the Notice of Dismissal and Rights for that charge. See Taylor v. Potter, 355 F. Supp. 2d 817, 818 (M.D.N.C. 2005) (citing 42 U.S.C. §§ 2000e-5(f)(1) and 2000e-16(c)) ("Plaintiff had ninety days from the date of receipt of the EEOC right-to-sue letter in which to file this action.").

For these reasons, UPS's motion to dismiss as to conduct preceding April 2016 will be granted.

### C. Post-April 2016 Claims

#### 1. Sex Discrimination

A Title VII sex discrimination claim must "include adequate factual allegations to support a claim that the [employer] discriminated" against the plaintiff on the basis of sex. McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 583 (4th Cir. 2015) cert. denied, 136 S. Ct. 1162 (2016). The elements of a prima facie case of Title VII discrimination are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md.

Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).[3] An employee need not allege specific facts to make out a prima facie case. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). However, a plaintiff must at least allege sufficient facts "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Mere conclusory allegations that an employment action was taken because of sex are insufficient to survive a motion to dismiss. See Coleman, 626 F.3d at 190-91; McKissick-Melton v. N.C. Cent. Univ., No. 1:16-CV-605, 2016 WL 6806234, at *2 (M.D.N.C. Nov. 17, 2016). "An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits[] of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations omitted) (citing Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001)). In determining what constitutes an "adverse employment action," the Fourth Circuit has consistently focused on "whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." Laprise v. Arrow Int'l, 178 F. Supp. 2d 597, 605 (M.D.N.C. 2001) (citing Page v. Bolger, 645 F.2d 227,

---

[3] A plaintiff is not required, as a matter of law, to point to a similarly-situated comparator in order to prevail on a discrimination claim, if she can demonstrate that circumstantial evidence suggests discrimination. Bryant v. Aiken Reg'l Med. Centers Inc., 333 F.3d 536, 546 (4th Cir. 2003).

8

233 (4th Cir. 1981)).

UPS contends that Watson has failed to allege an adverse employment action, arguing that having to relieve a co-worker and having to work a nine-hour day, as opposed to an eight-hour day, does not constitute an adverse employment action.

The court agrees. Though Watson alleges that she was forced to wait for an hour to begin her route and that she, instead of a more junior driver, was called as a substitute driver, neither of these actions meets the standard of an adverse employment action. Watson has not alleged an "ultimate employment decision" that may have been negatively influenced by her sex. The events that Watson complains of could best be described as nuisances, which the Fourth Circuit has determined are not subject to redress under Title VII. Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999) (noting that Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment), abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67 (2006). Watson continues to serve in her same position without change to her compensation or her usual responsibilities. Without some ultimate employment decision altering her circumstances, she has not alleged an adverse employment action. Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 243 (4th Cir. 1997) (finding that yelling at plaintiff and instructing employees to ignore and spy on plaintiff did not rise to the level of adverse employment

9

action.); Laprise v. Arrow Int'l, 178 F. Supp. 2d 597, 607 (M.D.N.C. 2001) (noting that allowing some workers to perform less work or being more social with some workers did not inherently rise to the level of adverse employment action).

Further, Watson does not allege constructive discharge, nor does she allege facts that could plausibly support her claim that she was harassed due to her gender. For these reasons, Watson's sex discrimination claim must fail.

**2. Hostile Work Environment**

Watson's complaint alleges that UPS's "extreme and outrageous actions" give rise to a hostile work environment in violation of Title VII. (Doc. 1 ¶ 19.) UPS argues that, assuming Watson intends to pursue such a claim, the complaint's allegations fail to make it plausible.

A hostile environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted). To establish a claim of hostile work environment, a plaintiff must show that she experienced harassment that was (1) unwelcome; (2) based on her protected status; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and

(4) imputable to the employer. See EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010). Whether the environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). That determination is made by examining the totality of the circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

Watson's complaint includes no allegation of any offensive touching or offensive language used in her presence. See Boyer-Liberto v. Fontainebleau Corp, 786 F.3d 264, 277 (4th Cir. 2015). Watson alleges that she was harassed by her supervisor for taking too many bathroom breaks; however, this alleged harassment occurred in 2010. (Doc. 1 ¶ 9.) A hostile work environment claim must be filed within 180 or 300 days after the alleged unlawful employment activity occurred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). Though the court may consider the "entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period," there still must be some "act contributing to that hostile

environment [that] takes place within the statutory time period." Id.

Watson does allege that "[t]his is an ongoing matter as Ms. Watson continues to face discriminatory action from her supervisors on a daily basis." (Doc. 1-1; Doc. 1 ¶ 8.) However, this is a mere conclusion lacking in any factual support that suggests any ongoing harassment. See Coleman, 626 F.3d at 190-91 (noting that conclusory allegations are insufficient to survive a motion to dismiss). Further, Watson has failed to allege facts which plausibly support a claim that any harassment was based on her gender. See Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). As such, her hostile work environment claim, to the extent that she is making one, fails.

3. **Retaliation**

Title VII prohibits an employer from "retaliating against an employee for complaining about prior discrimination." Welton v. Durham Cty., No. 1:17-CV-258, 2017 WL 3726991, at *4 (M.D.N.C. Aug. 28, 2017) (citing Foster v. Univ. of Md.–E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)). A plaintiff may prove retaliation "either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of McDonnell Douglas." Id. To state a prima facie retaliation claim under Title VII, a plaintiff must establish that (1) she engaged in a protected activity; (2) her employer took a materially adverse

action against her; and (3) a causal connection exists between the protected activity and the adverse action. Coleman, 626 F.3d 187 at 190; Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998); Perry v. Computer Scis. Corp., 429 F. App'x 218, 220 (4th Cir. 2011). If a plaintiff succeeds in making a prima facie retaliation claim, the burden shifts to the defendant to produce evidence that its actions were not retaliatory. Foster, 787 F.3d at 250 (4th Cir. 2015). If the defendant does so, then the plaintiff must show by a preponderance of the evidence that the defendant's asserted grounds for taking its action were a pretext for retaliation. Id.; Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216–17 (4th Cir. 2016). To establish pretext in a Title VII retaliation claim, a plaintiff must show that his protected activity was a "but-for" cause of the adverse employment action. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 358–61 (2013). When proceeding under the burden shifting framework, this is met by showing pretext and that discrimination was the "real reason for the challenged conduct." Foster, 787 F.3d at 252. In the retaliation context, the standard for what constitutes an adverse employment action is not as stringent as that for employment discrimination. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64–68 (2006) (noting that the adverse action component of Title VII's anti-retaliation provision can be satisfied by showing that the employer took "materially adverse" action in response to

13

an employee engaging in a protected activity "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal quotation omitted).

Watson alleges that "Plaintiff was meeting Defendant's reasonable expectations at the time of the adverse action despite Defendant's allegations to the contrary which were retaliatory in nature for Plaintiff's ongoing complaints of discrimination." (Doc. 1 ¶ 26.) UPS argues that Watson has failed to allege that she was engaged in a protected activity and also failed to allege specific allegations of discrimination that could "put UPS on notice about the substance of her alleged complaints or whether she actually engaged in statutorily protected activity at all." (Doc. 8 at 15.)

To survive a Rule 12(b)(6) motion, a complaint must set forth factual allegations that, when taken as true, make a claim plausible. Here, Watson has alleged no facts that she was engaged in a protected activity since April 2016 or, even so, that there was a causal connection between her engagement in any activity and the complained of conduct of the employer.[4] Moreover, her allegation that "[s]ince 2010" she has "continuously been

---

[4] To the degree that Watson is referring to retaliatory activity against her due to her February 2011 EEOC charge, that retaliation claim is barred as untimely. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

14

discriminated and retaliated against by Defendant" (Doc. 1 ¶ 8), is wholly conclusory and fails to render any retaliation claim plausible. Coleman, 626 F.3d at 190-91. Although it is unlikely that this claim, like all other post-April 2016 claims, could be salvaged by re-pleading, a dismissal without prejudice appears appropriate.

**III. CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Defendant's motion to dismiss (Doc. 7) is GRANTED and that the complaint is DISMISSED WITH PREJUDICE except for those claims involving post-April 2016 conduct, which are DISMISSED WITHOUT PREJUDICE.

/s/   Thomas D. Schroeder<br>United States District Judge

July 5, 2018